CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
12/30/2025
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
     DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| LAXMI ENTERPRISE, INC., | |
| *Plaintiff*, | CASE NO. 6:25-CV-00049 |
| v. | |
| WESTERN EXPRESS, INC., | MEMORANDUM OPINION |
| *Defendant*. | JUDGE NORMAN K. MOON |

In this negligence action, Plaintiff Laxmi Enterprise, Inc. ("Laxmi") accuses a driver for Western Express, Inc. ("Western Express") of destroying its off-road diesel pump by backing an 18-wheeler into it. Dkt. 1-1 ¶ 1. Surveillance footage—which has been reviewed by the Virginia State Police—confirms that Western Express' driver caused the damage to Laxmi's pump. *Id.* ¶ 20; *see also* Dkt. 21-3 ¶ 2 (Western Express admits its drive struck the fuel pump). Laxmi seeks the following damages: (1) $30,979.38 to replace the damaged pump; (2) $28,426.42 in "minimum sales" costs that it will incur from its diesel supplier while the damaged pump is out of commission; (3) $1,800 in signage and decal replacement around the destroyed pump; (4) $10,344 in lost profits from off-road diesel sales while the pump is out of commission;[1] and (5) $18,000 in tangential, in-store purchases that will be lost because diesel customers must go to a different store. *Id.* ¶¶ 36–48. Western Express has moved for summary judgment, arguing that: (1) Laxmi is not entitled to lost profits as a matter of law, and (2) Laxmi cannot prove its damages to the pump because it did

---

[1] Plaintiff also alleges another $5,871.45 in "lost income from on-road diesel sales," and $5,000 in "loss of income from other in-store sales." Dkt. 1-1 ¶¶ 45–46. However, the Complaint is entirely unclear how these damages differ from the $10,344 in lost income from off-road diesel sales and $18,000 in lost income from other in-store purchases Plaintiff already claimed. *Compare id.* ¶¶ 39–40 to ¶¶ 45–46.

not designate an expert witness to opine on diminution in value. *See* Dkt. 20. Laxmi responds that lost profits are recoverable against a tortfeasor in Virginia, and that Western Express' inflexible view of the test for property damages ignores the law's goal of "compensat[ing] the injured party for the damages proximately caused by the tortious conduct." Dkt. 23 at 4 (citing *Lochaven Co. v. Master Pools by Schertle, Inc.*, 233 Va. 537, 541 (Va. 1987)). After considering these arguments, the Court will deny Western Express's motion for summary judgment.

## I.     Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine if a reasonable [factfinder] could return a verdict for the nonmoving party," and a fact is "material if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). The moving party bears the burden of establishing its entitlement to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

If the moving party meets its burden, the nonmoving party must "show that there is a genuine dispute of material fact ... by offering sufficient proof in the form of admissible evidence." *Id.* (quoting *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)); *see also Bandy v. City of Salem, Virginia*, 59 F.4th 705, 709 (4th Cir. 2023). The district court must "view the evidence in the light most favorable to the nonmoving party" and "refrain from weighing the evidence or making credibility determinations." *Id.* "Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

## II. Discussion

### A. Lost Profits

Western Express cites two Virginia cases for the proposition that "absent privity of contract, economic losses cannot be recovered in a negligence action." Dkt. 21 at 7 (citing *Rotonda Condo. Unit Owners Ass'n v. Rotonda Assocs.*, 238 Va. 85, 90 (Va. 1989) and *Ward v. Ernst & Young*, 246 Va. 317, 325 (Va. 1993)). These cases hold that a plaintiff cannot use tort law to recover disappointed business expectations arising out of a contract. *Id.* *Rotunda* and *Ward* do not hold, however, that a tortfeasor can destroy a plaintiff's income-producing property without being held liable for lost profits. Simply put, Western Express misapplies Virginia's economic loss rule to this pure tort claim.

The economic loss rule seeks to preserve the difference between tort and contract claims and to ensure that tortfeasors are not held liable for a sweeping set of losses that were unforeseeable. *Ward*, 246 Va. at 328. The Supreme Court of Virginia explained the difference between "economic losses" and "claims for injuries to persons or property":

> The controlling policy consideration underlying tort law is the safety of persons and property—the protection of persons and property from losses resulting from injury. The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for. If that distinction is kept in mind, the damages claimed in a particular case may more readily be classified between claims for injuries to persons or property on one hand and economic losses on the other.
>
> The plaintiffs here allege nothing more than disappointed economic expectations. They contracted with a builder for the purchase of a package. The package included land, design services, and construction of a dwelling. The package also included a foundation for the dwelling, a pool, and a pool enclosure. The package is alleged to have been defective—one or more of its component parts was sufficiently substandard as to cause damage to other parts. The effect of the failure of the substandard parts to meet the bargained-for level of quality was to cause a diminution in the value of the whole,

3

> measured by the cost of repair. This is a purely economic loss, for which the law of contracts provides the sole remedy.

*Id.*, 246 Va. at 328 (citing *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 425 (Va. 1988)). This distinction between economic loss (contractual) and loss from property damage (tort) is critical.[2] *See KeraLink Int'l, Inc. v. Geri-Care Pharms. Corp.*, 60 F.4th 175, 184 (4th Cir. 2023) (discussing Maryland's economic loss rule, which is like Virginia's, and holding that a plaintiff can recover reasonably foreseeable damages, including lost profits, arising from property damage).

Here, Laxmi did not have any economic expectations arising from a contract with Western Express or its driver. Western Express' driver was a stranger to Laxmi, who pulled into its parking lot and destroyed its property. It is certainly reasonably foreseeable to any tortfeasor that destroying a gas pump will cause its owner to lose profits. Thus, this a classic claim for injury to property rather than an economic loss resulting from disappointed contractual expectations. Therefore, *Sensenbrenner*, 236 Va. at 419; *Rotonda Assocs.*, 238 Va. at 90; and *Ward*, 246 Va. at 325—which addressed economic loss from contractual expectations—are inapposite.

Because this is a pure negligence action, lost profits are recoverable. *See Hop-In Food Stores, Inc. v. Serv-N-Save, Inc.*, 247 Va. 187, 190 (Va. 1994) ("In Virginia, loss of future profits proximately caused by wrongful conduct, which results in the interruption or destruction of an established business, may be recovered from a tort-feasor, provided the lost profits are capable of reasonable ascertainment and are not uncertain, speculative, or remote.") (citing *United Constr.*

---

[2] Economic losses are defined as "stand-alone economic harms or losses … not arising from personal injury or damage to tangible property." *KeraLink Int'l, Inc.*, 60 F.4th at 184 (citing Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* § 605 (2d. ed. July 2022 Update)).

4

*Workers v. Laburnum Constr. Corp.*, 194 Va. 872, 887 (Va. 1953)). Because Western Express's summary judgment motion misconstrues the application of Virginia's economic loss rule, it must be denied.

To the extent Western Express argues that an expert witness is necessary to prove lost profits, that argument must also be rejected. A businessowner may present factual evidence of its profits before and after the tort to establish lost profit. *See*, *e.g.*, *R.K. Chevrolet, Inc. v. Hayden*, 253 Va. 50, 57 (Va. 1997). Presumably, though, Western Express will offer some evidence that six months of lost profits is unreasonable, and that Laxmi should have done a better job of mitigating its damage. *See Rodrigue v. Butts-Franklin*, 79 Va. App. 645, 656 (Va. Ct. App. 2024) (discussing Virginia law's requirement for mitigation). However, these are all matters for trial. At the summary judgment stage, Western Express has not shown: (1) that Laxmi is not entitled to lost profits as a matter of law, or (2) that Laxmi cannot prove lost profits through lay testimony.

**B.  Damages to the Fuel Pump**

Western Express also argues that: (1) Laxmi can only recover for damages to its pump by proving diminution in value—*i.e.*, the pump's change in value based on the tort, Dkt. 21 at 7–9, and (2) diminution in value can only be established through expert testimony, *id.* According to Western Express, Laxmi's failure to designate an expert dooms its negligence claim. *Id.*

Under Virginia law, "the general rule for determining ... damages for injury to personal property is to subtract the fair market value of the property immediately after the loss from the fair market value thereof immediately before the injury, the remainder, plus necessary reasonable expenses incurred, being the damages." *White Consol. Indus., Inc. v. Swiney*, 237 Va. 23, 30 (Va. 1989) (citing *Averett v. Shircliff*, 218 Va. 202, 206-07 (Va. 1977)). That rule applies "[w]hen

5

diminution in market value can be reasonably ascertained." *Younger v. Appalachian Power Co.*, 214 Va. 662, 664 (Va. 1974).

However, this rule should not be rigidly applied. *Younger*, 214 Va. at 664 (emphasis added) ("[T]he sundry rules for measuring damages are subordinate to the ultimate aim of making good the injury done or loss suffered and hence '[t]he answer rests in good sense rather than in *a mechanical application of a single formula*.'"). General damages rules are "a standard, not a shackle." Charles T. McCormick, *Handbook on the Law of Damages* § 45 (1935). For example, "when the damaged property has no ascertainable market value or when market value would be a manifestly inadequate measure, then some other measure must be applied." *Id.* (citing *Norfolk & W. Ry. Co. v. Richmond Cedar Works*, 160 Va. 790, 806-07 (Va. 1933)). Therefore, while Western Express is correct that diminution of value is the leading measure of property damage, Dkt. 21 at 7 (citing *White Consol. Indus., Inc.*, 237 Va. at 23), it is not the only measure. Other evidentiary methods exist for "determining the amount which will reasonably compensate the owner for his actual pecuniary loss sustained as a result of a negligent or wrongful act," including "restor[ing] by repair." *Averett*, 218 Va. at 207-08.

Given the variety of ways Laxmi could prove its damages, the Court cannot say, as a matter of law, that Laxmi's negligence claim fails because it did not designate an expert witness on diminution of value.[3] Laxmi's owner could, for example, offer factual evidence based on his

---

[3] The Court does not agree, as a matter of law, that diminution of value can only be proven through expert testimony. Expert testimony may well be required is some (or even most) cases. But it would be patently unjust to establish a *per se* rule requiring expert testimony to prove diminution in value, especially in cases where the cost of the expert testimony would outstrip the value of the case. Take for example the case of a broken window. The window may be worth several hundred dollars, but retaining an expert could cost thousands of dollars. Injured parties should not be compelled to abandon their meritorious tort claims because of an inflexible legal requirement requiring expert testimony to establish relatively simple damages like the value of a window or a gas pump.

6

experience as a business owner about how much used gas pumps cost on the open market. This type of testimony would allow the trier of fact to infer the value of the damaged gas pump at the time of the accident. Because the destroyed pump was presumably valueless after the accident, an acceptable measure of damage would be the approximate value of the gas pump at the time it was destroyed. Given this, the Court cannot say that only an expert can establish the value of a used gas pump, especially when Laxmi's owner may have recently purchased or priced used gas pumps. Moreover, Laxmi may be able to introduce admissible market compilations, in which case no expert testimony would be necessary. *See* Fed. R. Evid. 803(17).

It also appears that Laxmi intends to offer evidence about the cost to repair or replace the pump as a measure of its damage. *See* Dkt. 21-2 at ¶ 15 (noting that Laxmi has an estimate to replace the pump). At least one Virginia case suggests that the burden is on a defendant to establish that "repair or replacement of wrongfully removed or destroyed property results in an unjustified betterment of the plaintiff." *Lee v. Bell*, 237 Va. 626, 629-31 (Va. 1989). In other words, Western Express bore "the initial burden of going forward with some evidence of depreciation." *Id.* Thus, if Western Express wanted to prove that Laxmi's gas pump was worth less than the cost to repair or replace the pump, it bore the burden of either: (1) presenting factual evidence about the pumps' values, or (2) designating an expert to opine on diminution in value. Western Express' motion attempts to shift this burden to Laxmi; however, Western Express, not Laxmi, is responsible for proving that Laxmi's actual damages are less than the value to repair or replace.

To save its motion for summary judgment, Western Express argues that Laxmi bears the burden of producing disputed, admissible evidence. Dkt. 25 at 2. Ordinarily, that would be true. But here, Western Express did not meet its initial burden of establishing summary judgment is warranted. *See Celotex Corp.*, 477 U.S. at 322–23. Instead, it relied on two pure legal

7

arguments—both of which are unavailing. Laxmi appropriately responded to Western Express's legal arguments and neither of those arguments entitle Western Express to summary judgment. Moreover, at the very least, Western Express concedes that Laxmi can present an estimate to repair or replace its pump (and presumably could present live testimony about the cost of repairing or replacing the pump). Dkt. 21 at 8–9. That is sufficient to survive summary judgment given the relative simplicity of the damages in this case.

### III.  Conclusion

For these reasons, Western Express's motion for summary judgment must be denied.

An appropriate order will follow.

Entered this 30th day of December, 2025.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE